# Wynn *v.* Duve, Appellant.

*Judgments—Opening judgments—Discretion of court.*

An application to open a judgment, regularly and formally entered in a court of law, is an appeal to the equitable powers of the court where the judge sits as a chancellor. He is the trier of the questions of fact that may be involved in the controversy, and he is invested with a wide discretion in the consideration of conflicting evidence, and the determination of the correct conclusions to be reached therefrom. Unless it appears from the record that there has been an abuse of that discretion, there is no sound reason for interference with the conclusions he reaches.

*Judgments—Married women—Accommodation makers—Sureties —Primary obligations.*

A married woman who gave notes to purchase the stock of a store which she subsequently turned over to her son is not necessarily an accommodation maker. Where the full consideration passed from the vendor and his title to the personal property vested in the vendee, the court did not err in refusing to open the judgment obtained on one of the notes on the ground of her inability to become surety for her son.

Argued April 29, 1920. Appeal, No. 4, April T., 1920, by defendant, from judgment of C. P. Allegheny County, Oct. T., 1914, No. 1112, discharging rule to open judgment in the case of A. Wallace Wynn, administrator d. b. n. c. t. a. of the estate of L. L. Wynn, deceased, v. Theannah Duve, otherwise known as Theanna E. Duve. Before PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Affirmed.

Rule to open judgment. Before MACFARLANE.

The facts are stated in the following opinion of the court below discharging the rule:

Judgment was entered on September 28, 1914, in the sum of $1,000 on note dated September 21, 1914, made by the defendant to the order of L. L. Wynn, at three years, with interest, it being one of three notes of the same date in the same amount entered at Nos. 1110 and 1111, October Term, 1914. Execution was issued October 9, 1917, and levy made on defendant's real estate, and this petition to open the judgment was presented October 30, 1917. The averment is that the defendant is not and never was indebted to the plaintiff in any sum, that she signed the note as surety for her son, Harry Duve. That at and prior to September 21, 1914, the plaintiff sold a piece of property, including a general store and contents, to Harry Duve, for $6,500, upon which property Harry Duve gave a mortgage for $3,500, and at the request of the plaintiff and Harry Duve the defendant agreed to become surety for the purchase in $3,000, of which sum the judgment note is a part. She was and is a married woman.

The plaintiff's answer was that on September 21, 1914, he sold his stock of goods, fixtures, good will and business of his general store to the defendant, executing and delivering to her a bill of sale and the possession for the consideration of $3,000, secured by three notes, and it is denied that she was surety. That on November 21, 1914, plaintiff sold to Harry Duve the real estate on which the store was situated and that Harry Duve gave a purchase-money mortgage for $2,700 to secure part of the purchase price. That on January 18, 1915, the defendant paid $500 to plaintiff on account of the principal of the note, on which this judgment was entered, and executed a writing set forth in the answer, by which she agreed to pay the interest on the three notes in consideration of the release of liens for a certain right of way.

Testimony was taken ex parte defendant on November 6 and 12, 1917. The plaintiff died on January 15, 1918, and his testimony was never taken, there being testi-

mony that he was very ill in November and until his death.

The testimony does not establish a written agreement of sale from Wynn to Harry Duve. The testimony of the latter is unsupported, he does not state the terms or other important contents of such an agreement. His mother and father do not support him and altogether the testimony is not clear and precise.

Harry Duve testified that the bill of sale was made out to his mother, that she executed three notes which were delivered to Mr. Jones and that she took the bill of sale.

The sale of the store and conveyance of the real estate were separate transactions, the deed being dated November 21, 1914, and executed December 16th.

Mrs. Duve paid $500 on account of the principal of this note on January 18, 1915, and executed papers set out in plaintiff's answer, promising to pay the interest on the three notes semiannually.

The testimony ex parte defendant shows that Mr. Wynn, after the preliminary negotiations, referred the matter to his attorney, Mr. Jones, and that he conducted the sale for Mr. Wynn.

Harry Duve's conduct was inconsistent with the claim that he was the purchaser. He now says that he was indebted to Wynn for the purchase price of the store. He made a written statement to T. C. Jenkins on December 3, 1914, for the purpose of obtaining credit, in which he gives his entire liabilities as $350. He collected the insurance and did not pay Wynn. He gave Wynn no obligation whatever for the purchase of the store.

A paper, dated September 21, 1914, signed by Wynn, giving notice to customers, "Harry W. Duve has bought the paper route and will deliver papers after above date. He will collect for month of September. L. L. Wynn," is not a declaration that Duve had bought from Wynn.

We have a responsive answer and all of the documentary evidence is that the sale was to Mrs. Duve.

Against this is the testimony of a number of witnesses that Wynn had stated that he had sold the store to Harry. They were salesmen, representing business houses of which he had been a customer. One of them says that he referred to Harry as his successor. There is other testimony that the negotiations were for a sale from Wynn to Harry. Against this loose and often inconsistent testimony, the testimony of Mr. Jones is clear and credible. He is not only a lawyer of good repute but it is preposterous that with his learning and experience he would have advised his client to take the obligation of a married woman to secure the debt of another. He states, in substance, that Mrs. Duve and her son came to his office, that she said she wished to purchase the store for Harry; she had helped her other son, and the suggestion was made that the sale should be made to him and that she would go on his note, and Mr. Jones informed them that this could not be done but that the sale would be made to her, to be secured by her notes and that this was done. No other agreement was executed. The testimony of Wallace Wynn and others corroborates him.

The defendant's counsel contends that the transaction was "a transparent device" to evade the statute and cites Patrick v. Smith, 165 Pa. 526; Sibley v. Robertson, 212 Pa. 27; Goldslager v. Carracciolo, 63 Pa. Superior Ct. 73; Oswald v. Jones, 254 Pa. 32, and other cases of the same class. They have no application to the facts before us. Harry Duve was without property or credit. His mother wished to set him up in business and bought the store with the expressed intention of giving it to him and carried out her purpose at once. This she could do: Yeany v. Shannon, 256 Pa. 135.

In view of the death of the plaintiff, the lapse of time before any objection was made, the facts shown by all of the documentary evidence, the uncertainty of the oral evidence (Rehm v. Frank, 16 Pa. Superior Ct. 175), and

436        WYNN *v.* DUVE, Appellant.

the clear probabilities, we have no question that it is our duty to discharge the rule.

*Error assigned* was the order of the court.

*John A. Langfitt,* and with him *H. W. McIntosh,* for appellant.—The defendant as a married woman was not competent to become a surety and the case was for a jury: Sibley v. Robertson, 212 Pa. 27; Goldslager v. Carraccioli, 63 Pa. Superior Ct. 73; Oswald v. Jones, 254 Pa. 32; Keystone Brewing Company v. Varzaly, 39 Pa. Superior Ct. 156; Yeany v. Shannon, 256 Pa. 135; Murray v. McDonald, 236 Pa. 26.

*Daniel Harrison,* for appellee.

Opinion by Head, J., July 14, 1920:

It seems useless to repeat but it is wise to remember that an application to open a judgment regularly and formally entered in a court of law is an appeal to the equitable powers of the court where the judge sits as a chancellor. He is the trier of the questions of fact that may be involved in the controversy and he is invested with a wide discretion in the consideration of conflicting evidence and the determination of the correct conclusions to be reached therefrom. Unless it appears from the record that there has been an abuse of that discretion, there is no sound reason for interference with the conclusions he reaches.

The opinion filed by the learned judge below and which will be printed with the record of this appeal clearly shows that he gave due consideration to all of the conflicting evidence in the case. He accepted as truthful the testimony of a member of his own bar, personally well known to him as a man of intelligence and integrity. His testimony is clear, directly on the point, and, like the learned court below, we find it convincing. In according credibility to his testimony, we cannot

perceive how it can be successfully urged the learned court below abused the discretion reposed in him. The transaction was neither immoral nor illegal. It is true the appellant, a married woman, was not competent to become a surety for her son or for any other person because in that respect the law had not relieved her of the disabilities imposed by her coverture. It is not denied she executed and delivered the obligation upon which judgment was regularly entered. It is not denied that a full consideration therefor passed from the appellee. It cannot be urged that the title to the personal property was not lawfully vested in her and that it was by her will and her act turned over to her son. The judgment remained on the record unquestioned for several years; that a payment of five hundred dollars on account of it had been made by the appellant and it was only when the appellee sought to collect, by legal process, what was due and unpaid, her petition to open the judgment was filed.

All of these matters are clearly yet briefly set forth in the opinion of the learned judge below and they convince us that, in discharging the rule to open the judgment, he cannot be convicted of an abuse of discretion. The assignments of error must therefore be overruled.

Appeal dismissed at the costs of the appellant.